William **GELINEAU,** Gary E. Johnson, and Libertarian Party of Michigan, Plaintiffs,

v.

Ruth **JOHNSON,** Secretary of State of Michigan, in her official capacity, Defendant.

No. 1:12–cv–976.

United States District Court, W.D. Michigan, Southern Division.

Sept. 17, 2012.

Thomas S. Baker, Jason C. Miller, Miller Johnson PLC, Grand Rapids, MI, for Plaintiffs.

Denise C. Barton, Nicole Amber Grimm, MI Dept. Attorney General, Lansing, MI, for Defendant.

### *OPINION AND ORDER DENYING MOTION FOR INJUNCTIVE RELIEF*

PAUL L. MALONEY, Chief Judge.

This case involves the issue of whether Gary E. Johnson should be listed on Michigan's ballots as the Libertarian Party's nominee for President. Mr. Johnson, a citizen of Texas, is, for lack of a better term, the Party's backup candidate. Its original nominee, a former governor of New Mexico also named Gary Johnson, has been barred from the ballot under Michigan's "sore loser" law, Mich. Comp. Laws § 168.695. Plaintiffs—the Libertarian Party of Michigan, Mr. Johnson himself, and William Gelineau, a Michigan citizen who allegedly wishes to vote for Gary E. Johnson—argue that the Party properly nominated Gary E. Johnson as its alternative candidate in case the Secretary of State refused to place Gary Johnson on the ballot, and that the Secretary's refusal to recognize Gary E. as such violates their rights under the United States Constitution.

Before the court today is Plaintiffs' motion for temporary restraining order and preliminary injunction, filed September 12, 2012. (ECF No. 3.) Plaintiffs ask this court to enjoin the Michigan Secretary of State from printing, or allowing to be printed, general-election ballots unless they list Gary E. Johnson as the Libertarian Party's nominee for President. Defendant has been given notice of this motion and has filed a brief in response. She states that she is bound by law to ensure that overseas voters receive ballots by September 22, 2012, and that to do so, she must continue with the current schedule, including approval of local jurisdictions' ballots for printing on September 13 or 14. She therefore declines to halt the state's ballot process without an order from this court.

As discussed below, the court finds that Plaintiffs have failed to exercise proper diligence in asserting their claims and that this failure has prejudiced the Secretary. Plaintiffs' claims are therefore barred by the doctrine of laches, and so the court will deny their motion for injunctive relief.

### I. FACTUAL BACKGROUND

On June 2, 2012, the Libertarian Party of Michigan held its state convention. The Party nominated Gary Johnson, the former governor of New Mexico, as its candidate for President. Johnson was an apparent recent convert to the Party. Before he switched in late 2011, Mr. Johnson

had been running for President as a Republican, and his name had been listed on the Republican Party's primary ballot in early 2012.

Michigan law states that "[n]o person whose name was printed or placed on the primary ballots or voting machines as a candidate for nomination on the primary ballots of 1 political party shall be eligible as a candidate of any other political party at the election following that primary." Mich. Comp. Laws § 168.695. The Libertarian Party recognized that this provision, commonly known as the "sore-loser statute," potentially applied to Mr. Johnson. Indeed, as early as May 3, 2012, Michigan's Secretary of State took the position that she would refuse to include Gary Johnson's name on the ballot as the Libertarian Party's candidate.

To prepare for this possibility, the Libertarian Party of Michigan took what appears to be a novel step: it nominated a backup candidate. In particular, the Party nominated Gary E. Johnson, a Texas citizen, as its stand-in candidate in the event that the Secretary followed through on her resolution to keep the original Gary Johnson off the state general election ballot. On June 2, 2012, the Party certified their nomination(s) to the Secretary, as required by Mich. Comp. Laws § 168.686.

On June 25, 2012, the Libertarian Party of Michigan, along with Gary Johnson and Denee Rockman–Moon, chair of the Party and a Michigan voter, filed suit in the Eastern District of Michigan. Complaint, *Libertarian Party of Mich. v. Johnson*, No. 2:12–cv–12782 (E.D.Mich. June 25, 2012). The plaintiffs claimed that the sore-loser statute did not apply to Mr. Johnson, and that if it did, the statute would violate their First and Fourteenth Amendment rights. *Id.* At a motion hearing on September 6, 2012, District Judge Paul Borman granted the Secretary of State's motion to dismiss the plaintiffs' claims. Shortly thereafter, Judge Borman followed up with a written opinion. *Libertarian Party of Mich. v. Johnson*, No. 2:12–cv–12782, —— F.Supp.2d ——, 2012 WL 3930557 (E.D.Mich. Sept. 10, 2012).

On September 7, the day after Judge Borman dismissed Gary Johnson's case, the Secretary of State (through Christopher Thomas, Michigan's Director of Elections) informed the Party that Gary E. Johnson's name would not appear on the ballot either. Mr. Thomas explained that "no provision of the Michigan Election Law authorizes a political party to nominate a contingent or stand-in candidate."

On September 11, 2012, the Libertarian Party of Michigan, Gary E. Johnson, and William Gelineau, a Michigan citizen who allegedly wishes to vote for Gary E. Johnson, filed suit in this court. (ECF No. 1.) Plaintiffs argue that the Party properly nominated Gary E. Johnson as its alternative candidate in case the Secretary of State refused to place Gary Johnson on the ballot, and that the Secretary's refusal to recognize Gary E. as such violates their rights under the First and Fourteenth Amendments to the United States Constitution. (*Id.*) Plaintiffs requested expedited consideration, noting that the Secretary planned to send ballots to the printers on September 13 or 14. The following day, Plaintiffs filed a motion for temporary restraining order. (ECF No. 3.) Pursuant to this court's order, the Secretary filed a brief in response (ECF No. 8), and Plaintiffs filed a reply (ECF No. 10).

## II. LEGAL FRAMEWORK

In deciding whether to grant injunctive relief, a court must consider four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury

without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir.2008) (quoting *Northeast Ohio Coalition for Homeless and Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir.2006)).

## III. DISCUSSION

The question that baffles this court is why the instant claims were not filed much earlier. Plaintiffs knew as early as May 2 that the Secretary would reject former Governor Gary Johnson's candidacy. The Party acknowledged this by filing suit in late June to include Gary Johnson on the ballot, and it further confirmed its uncertainty on the issue by repeatedly asking the Secretary to confirm whether Gary E. Johnson would be on the ballot if its suit failed. Yet Plaintiffs did not file suit to establish Gary E. Johnson's status until September 11, just days before the Secretary was scheduled to send ballots to the printer.

■ The Secretary argues that under these facts, Plaintiffs' claims are barred by laches. This doctrine bars claims where two elements are present: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961).

■ The prejudice to the Secretary here is abundantly clear. She has presented an affidavit from Christopher Thomas, Michigan's Director of Elections, describing the numerous coordinated steps that must be taken in order for Michigan's 83 Boards of County Election Commissioners to prepare and print ballots consistent with federal and state law. In particular, the state must distribute ballots to absentee voters no later than September 22, 2012. *See* 42 U.S.C.1973ff–1(a)(8) ("Each State shall ... transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter ... not later than 45 days before the election."); Mich. Comp. Laws §§ 168.714(1), 168.759a(5). In order to meet this deadline, Mr. Thomas states that the Country Boards must create proofs of their individual ballots and submit those proofs to the Secretary for review. The secretary must then approve the proofs, along with any necessary corrections, before the Boards can begin printing the ballots. Mr. Thomas anticipated that printing would begin on September 13 or 14, after which, he claims, "it becomes impossible and cost-prohibitive to make further changes to the ballots." In reply, Plaintiffs present an affidavit from the City Clerk of Allen Park, Michigan, who states that even if the court ordered a ballot change on Tuesday, September 18, ballots could still be printed on time (albeit at some extra cost). But this affidavit does not account for the Secretary's need to proof the local boards' ballots, which would add costs and further delay printing. Even assuming that these changes are possible, the harm to the Secretary from having to act in such a short time frame is clear. This is true even if no reprinting is necessary and even if the Secretary does not miss any legal deadlines as a result. The Secretary is tasked with administering Michigan's elections, and both state and federal laws acknowledge the time-sensitive nature of this process. The Secretary—and by extension the people of Michigan—have a strong interest in managing the election process in an orderly manner. The Sixth Circuit has recently recognized the importance of this interest. On September 12—just one day after Plaintiffs filed this suit—the appellate court rejected the Eastern District

plaintiffs' motion for emergency injunction pending appeal, stating that entering injunctive relief at this time "would cause substantial harm to the orderly processing of the election and would not serve the public interest." *Libertarian Party of Mich. v. Johnson,* No. 12–2153 (6th Cir. Sept. 12, 2012).

Further, the court notes that the relief sought at this point is temporary and would have to be made permanent at a later date. Even if Plaintiffs ultimately prevailed, this unavoidable delay would sow uncertainty and disrupt the Secretary's ability to prepare for the election in the interim. If the Secretary prevailed, the harm would be much greater. At the very least, the cost to modify ballots at that point would be substantial. In all likelihood, modifications would no longer be possible. Plaintiffs' delay in bringing this suit would thus effectively turn a temporary restraining order into permanent relief.

As to diligence, Plaintiffs claim that they are not responsible for the timing of their suit. They argue that Gary E. Johnson could not claim to be the nominee until Gary Johnson was rejected—that is, when the Eastern District court dismissed his claim. This is utterly unconvincing. On one hand, because the Secretary has long taken the position that Gary Johnson is ineligible for the Libertarian Party's nomination, Gary E. Johnson has had grounds to claim a place on the ballot as early as May 2. On the other hand, Judge Borman's order is still under appeal, so Gary Johnson's claim to the nomination is still unsettled. If the Party wins on appeal, then Gary E. Johnson's claim dissolves. In any case, the Libertarian Party is itself largely responsible for the Eastern District's timing. In his order dismissing the suit, Judge Borman strongly condemned the plaintiffs' delays in bringing and prosecuting their claims:

> Plaintiffs' failure to act with any sense of urgency in this matter until August 19, 2012 is reprehensible. Plaintiffs were well aware, as early as May 3, 2012, that Johnson would be denied general election ballot access in Michigan, but waited until June 25, 2012 to file their Complaint, further waited until July 18, 2012 to serve the Defendant, further waited until August 2, 2012 to file their non-emergency motion for summary judgment, and vexatiously waited until August 19, 2012 to apprise the Court that their motion was of an urgent nature. Any effort on Plaintiffs' part to stay this Court's decision pending appeal should be met with great skepticism.

*Libertarian Party of Mich. v. Johnson,* No. 2:12–cv–12782, —— F.Supp.2d ——, 2012 WL 3930557 (E.D.Mich. Sept. 10, 2012).

The court recognizes that of the Plaintiffs here, only the Libertarian Party was directly involved in the Eastern District case, and so Judge Borman's opprobrium was not aimed at Plaintiffs William Gelineau and Gary E. Johnson. But these parties were not mere passive observers, forced to wait for the Eastern District case to complete before bringing their own claims. For its part, the Libertarian Party could have brought these claims in the Eastern District case directly, per Rule 18, "even though one of them [their claim regarding Gary E. Johnson] is contingent on the disposition of the other." Fed. R.Civ.P. 18(b). And both Gelineau and Gary E. Johnson could have raised their claims by intervening in that suit. Indeed, there is a strong argument for intervention by right under Rule 24(a):

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a). Both Gary E. Johnson and William Gelineau claim an interest in the content of Michigan's ballot. Mr. Johnson claims a right to the nomination itself, and Mr. Gelineau seeks to vindicate his right to vote for him; if the Eastern District plaintiffs succeeded, both interests would be impaired. Even to the extent these plaintiffs would prefer, in the first instance, that Gary Johnson be the nominee, the fact that their interest comes into play only if the original plaintiffs fail does not necessarily bar intervention. *See Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir.1987) ("interest" under Rule 24(a) "is to be construed liberally"); *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir.1995) ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation.").

 Plaintiffs argue that their claims did not ripen until the Eastern District plaintiffs lost and the Secretary actually informed the Party that she was going to reject Gary E. Johnson's candidacy. But this is far from clear. The doctrine of ripeness aims "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotation marks omitted). In determining whether an issue is ripe for resolution, the courts must look to "the hardship to the parties if judicial relief is denied," "the likelihood that the harm alleged by plaintiffs will ever come to pass," and "whether the case is fit for judicial resolution at the pre-enforcement stage." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997) (citing and quoting *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194–95 (6th Cir.1988)) (internal quotation marks omitted). Here, these factors would appear to support an earlier-filed suit. The major facts relevant to Plaintiffs' claims have been in place and well developed since the Party certified Gary E. Johnson's stand-in candidacy on June 2, 2012. At that point, the Secretary had already stated her intention to keep Gary Johnson off the ballot, and so Gary E. Johnson's claims were effectively fit for resolution. As to the second factor, the hardship to the parties from this late filing have been detailed above. An earlier suit would have minimized this hardship. Finally, though Plaintiffs argue that their injuries were hypothetical before the Secretary formally rejected Gary E. Johnson, the same can be said today; Gary Johnson could still win on appeal, negating the basis for this entire suit. It thus appears that Plaintiffs would have had a strong claim to ripeness well before September 11, 2012.

Plaintiffs point out that despite repeated inquiries, the Secretary did not inform them of her stance on Gary E. Johnson until September 7. While this is true, it does not excuse Plaintiffs' delay. It was clear to the Plaintiffs that they were attempting an unorthodox maneuver by trying to certify a contingent nominee in the first place. Plaintiffs also knew, or should have known, that the state requires significant lead time to ensure that absentee ballots are drafted, approved, printed, and mailed sufficiently prior to Election Day. Indeed, just two months ago, the United States sued the Secretary over her failure to send primary ballots to absentee voters before the statutory deadline. *See United States v. State of Michigan*, No. 1:12–cv–

788 (W.D.Mich. July 31, 2012). Combined with the Secretary's failure to respond to inquiries, these facts would have induced a reasonable party to file suit well before September 11.

Judge Borman rightly castigated the Eastern District plaintiffs for their delays: 52 days before filing suit, another 23 to serve the Secretary, 15 more to move for relief, and a final 17 before informing the court of their urgency. *Libertarian Party of Mich. v. Johnson*, No. 2:12–cv–12782, —— F.Supp.2d ——, 2012 WL 3930557 (E.D.Mich. Sept. 10, 2012). The Plaintiffs here are subject to no less criticism. While the Eastern District case meandered along, these Plaintiffs simply stood by and watched. They took no steps to join in or accelerate the Eastern District case. They made no effort to raise their claims in a parallel proceeding. Though they knew that legal deadlines were approaching rapidly, Plaintiffs showed no interest in ensuring that their claims could be timely considered. Predictably enough, this ensured that their claims would not be heard in good time; Plaintiffs filed suit just days before ballots were to be printed. As a result, their last-minute claims threaten to significantly prejudice the Secretary and undermine the orderly processing of the election, including the timely mailing of ballots to members of the military serving overseas who wish to vote for their Commander–in–Chief, effective January 20, 2013. Plaintiffs' claims are therefore barred by the doctrine of laches.

■ "[A] finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). This is no exception. Even assuming that the other three factors—irrepara-

ble injury, substantial harm to others, and the public interest—favor injunctive relief,[1] the fact that Plaintiffs' claims are barred is dispositive here. The court will therefore deny Plaintiffs' motion for temporary injunctive relief.

### ORDER

For the reasons discussed above, Plaintiffs' motion for temporary restraining order and preliminary injunction (ECF No. 3) is hereby **DENIED**. The hearing on this motion, previously scheduled for September 18, 2012 at 9:00 a.m., is hereby **CANCELED**.

**IT IS SO ORDERED.**

---

1. This is a generous assumption. As the Sixth Circuit recently noted, the public has a strong interest in the orderly processing of elections.

*See Libertarian Party of Mich. v. Johnson*, No. 12–2153 (6th Cir. Sept. 12, 2012).